■ In the Matter of CHARLES J. LOIACONO, Respondent, v NASSAU COMMUNITY COLLEGE, Appellant, and COUNTY OF NASSAU, Respondent. [692 NYS2d 113] —In a proceeding pursuant to CPLR article 75 to confirm an arbitration award dated May 1, 1997, Nassau Community College appeals from an order of the Supreme Court, Nassau County (Franco, J.), entered May 27, 1998, which, *inter alia*, confirmed the award.

Ordered that the order is reversed, with costs, the arbitration award is vacated, and the petition is dismissed.

In the spring of 1992 Michael Petrik requested and received a leave of absence from the appellant, Nassau Community College (hereinafter the college), because of a pending criminal case. After his conviction and shortly before he was incarcerated, Petrik, by letter dated March 15, 1993, requested a further extension of his leave of absence, indicating that "[i]f you are unable to grant my request, please forward my termination

letter and any unused sick time to me as soon as possible". The college had, however, already sent a letter dated March 11, 1993, advising Petrik that "effective immediately your services as an Instructor at Nassau Community College in the Department of Criminal Justice has [*sic*] been terminated". At the hearing in this matter, Petrik acknowledged that his employment ended on March 11, 1993, and that he did not know if his March 15, 1993, request for a further extension of his leave of absence was granted "because it was shortly thereafter, within a month that I was gone". On April 2, 1993, Petrik completed an "Employee's Claim for Payment Upon Termination" form, certifying that "I have terminated my employment with Nassau County on the termination date set forth above". Thereafter, Petrik received payment of sick and vacation time attributable to his full-time position with the college. The petitioner, the President of the Adjunct Faculty Association of the college, relies upon the Adjunct Faculty Association contract, which provides that a member of the adjunct faculty "who terminates adjunct service with the College shall be paid the cash value of accumulated but unused leave". Petrik applied for and received the unused sick time attributable to his adjunct service. Petrik also applied to the New York State Teachers' Retirement System (hereinafter the Retirement System) for a return of his contributions, and the college, in response to a May 13, 1993, letter from the Retirement System, acknowledged that Petrik was no longer employed, either full-time or part-time. Petrik subsequently wrote to the college expressing "an interest in coming back to work", but if that were "too risky", he volunteered to come into "corrections oriented classes to give students a talk on what prison is really like". Petrik's testimony, coupled with the documentary evidence, exemplifies his understanding that his employment with the college, both as an instructor and adjunct professor, ended in the spring of 1993. Thus, the arbitrators' finding that Petrik was still employed by the college as an adjunct professor as of the 1995-96 "Winterim", and entitled to the benefits of the contract, is totally irrational.

An arbitration award shall be vacated where it is totally irrational or violative of strong public policy (*see, Matter of Meehan v Nassau Community Coll.*, 242 AD2d 155, citing *Matter of Town of Callicoon [Civil Serv. Empls. Assn., Town of Callicoon Unit]*, 70 NY2d 907, 909; *Matter of Diaz v Pilgrim State Psychiatric Ctr.*, 62 NY2d 693, 695; *Matter of Heifetz [Walker & Zanger]*, 227 AD2d 623). In the present case, the record is patently clear that all parties understood that after the college's March 11, 1993, letter, Petrik was no longer employed by the college in any capacity.

In view of the foregoing, we have not considered the petitioner's contention that there is no public policy basis upon which to vacate the award. Ritter, J. P., Santucci, Luciano and H. Miller, JJ., concur.